IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
04 JAN -7 PM 3: 26
U.S. DISTRICT COURT
N D OF ALABAMA

ENTERED
JAN - 7 2004

| | |
|---|---|
| LAKISHA MURPHY, | ] |
| Plaintiff, | ] |
| v. | ] CV-02-BE-0319-S |
| MEMPHIS LAMP, INC., | ] |
| Defendant. | ] |

MEMORANDUM OPINION

I. INTRODUCTION

This case is before the court on a motion for summary judgment (doc. # 52) filed by defendant Memphis Lamp, Inc. ("Memphis Lamp"). After briefing by both sides, the court held a hearing on December 16, 2003. For the reasons stated on the record and summarized below, the court finds that the motion for summary judgment is due to be GRANTED in part and DENIED in part. Specifically, to the extent that the amended complaint could be read as alleging claims for constructive discharge and claims under Alabama tort law, the motion for summary judgment is due to be GRANTED as to those claims. Furthermore, the defendant's motion for summary judgment on the plaintiff's Title VII pregnancy discrimination claim is also due to be GRANTED. However, the defendant's motion for summary judgment on the plaintiff's sexual harassment claim is due to be DENIED.

Plaintiff Lakisha Murphy alleges a violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, ("Title VII"). Plaintiff contends that she was

subjected to a sexual harassment in the workplace and ultimately forced to resign her employment because of Memphis Lamp' failure to accommodate her pregnancy. The court has jurisdiction of the federal claims under 28 U.S.C. § 1331 pursuant to its federal question jurisdiction and supplemental jurisdiction of the pendent state law claims under 28 U.S.C. § 1367.

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact are presented and when the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The parties' disagreement on each and every fact is not significant; the law requires only that "there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See also Celotex v. Catrett,* 477 U.S. 317, 327 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 251-52. Mere speculation is insufficient to create an issue of fact and defeat a properly-supported motion for summary judgment. *See Ramsey v. Leath*, 706 F.2d 1166, 1169-70 (11th Cir. 1983).

## II. DISCUSSION[1]

In its motion for summary judgment, the defendant urges the court to dismiss the plaintiff's (1) sexually hostile working environment claim; (2) pregnancy discrimination claim; (3) tort claims under state law; and (4) constructive discharge claim. At oral argument, plaintiff's counsel advised the court that plaintiff was abandoning any constructive discharge or state law

---

[1] Based on the lengthy and through presentation of the facts in the parties' briefs and at oral argument, the court does not include a recitation of the facts in this Memorandum Opinion.

tort claims against Memphis Lamp. Consequently, the court concludes that the defendant's motion for summary judgment is due to be granted on these claims. The court further concludes that the defendant's motion for summary judgment is also due to be granted on the Title VII pregnancy discrimination claim based on the plaintiff's failure to establish a prima facie case. However, the court concludes that the plaintiff has established the existence of genuine issues of material fact that preclude judgment as a matter of law on the sexual harassment claim.

### A. Title VII Sexual Harassment Claim

The Eleventh Circuit has adopted a five-prong paradigm for analyzing sexual harassment claims. Specifically, the plaintiff must demonstrate that (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her sex; (4) the harassment was severe or pervasive so as to alter the conditions of her environment and create a hostile or abusive working environment; and (5) there is a basis for employer liability. *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 583 (11th Cir. 2000); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999); *Merriweather v. Ala. Dep't of Pub. Safety*, 17 F. Supp. 2d 1260, 1271 (M.D. Ala. 1998). At issue in this case are the second, fourth, and fifth prongs of the above-referenced analytical paradigm.

Memphis Lamp argues that the court can conclude as a matter of law that Murphy did not perceive the behavior of assistant manager Palmer Dorsey as unwelcome, as required under the second prong of the analytical paradigm, because plaintiff answered Dorsey's question about her favorite sexual position and waited until relatively late in her employment to lodge a sexual harassment complaint. The plaintiff's deposition testimony presents a genuine issue of fact on this issue.

3

"In order to constitute harassment . . . [the alleged] conduct must [also] be 'unwelcome' in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive." *Morgan v. Fellini's Pizza, Inc.,* 64 F. Supp.2d 1304, 1309 (N.D. Ga.1999) (citing *Henson v. City of Dundee,* 682 F.2d 897, 903 (11th Cir. 1982)). However, "[i]n determining whether conduct was unwelcome, the nature of the sexual advances and the context in which they occurred are to be viewed in light of the totality of the circumstances at issue." *Id. See also, Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 67 (1986) (emphasizing that courts must determine the existence of sexual harassment given the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred). "It does not follow, however, that the use of foul language or sexual innuendo in a consensual setting waives that plaintiff's legal protections against unwelcome harassment." *Nuri v. PRC, Inc.,* 13 F. Supp.2d 1296, 1301 (M.D. Ala. 1998) (quoting persuasive authority from Fourth and Seventh Circuits) (internal quotations omitted).

The record contains no evidence that plaintiff solicited or incited a sexually-charged atmosphere. Furthermore, the plaintiff's deposition testimony sufficiently creates a genuine issue of material fact on the issue of whether Dorsey's conduct was unwelcome. *See* Pl's Dep., p. 83-85 (indicating that plaintiff told Dorsey on several occasions to stop rubbing against her and touching her rear-end); Pl's Dep., p. 86 (telling co-workers that she did not like Dorsey's behavior contemporaneously with the allegedly inappropriate conduct). Based on this testimony and the factual differences between this case and the one primarily relied upon by the defendant,[2]

---

[2]*See Weinsheimer v. Rockwell Int'l Corp.*, 754 F. Supp. 1559, 1564 (M.D. Fla. 1990) (reasoning that plaintiff, who allegedly participated in vulgar storytelling, including mimicking oral sex and sharing pornographic material with the alleged harasser, could not demonstrate that the allegedly harassing

4

a jury could reasonably conclude that Dorsey's comments were unwelcome.

Similarly, the court concludes that the evidence adduced by the plaintiff creates a genuine issue of material fact regarding whether the alleged harassment was objectively severe and pervasive to constitute actionable sexual harassment. Although the "severe" or "pervasive" prong of the analytical paradigm "is not, and by its nature cannot be, a mathematically precise test,"[3] courts within this circuit typically examine (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating; and (4) whether the conduct unreasonably interferes with the employee's job performance. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 647 (11th Cir. 1997). At the summary judgment stage, the court's function is not to weigh evidence or determine the truth of the matter but merely to decide whether genuine issues of material fact are present for trial. *Anderson*, 477 U.S. at 249-50.

The following evidence adduced by the plaintiff creates a factual issue on the fourth prong of the sexual harassment analytical paradigm. During only three months of employment, Dorsey allegedly touched Murphy on her backside at least five times; repeatedly rubbed up against her, placing his genitals in contact with her body; and made sexually explicit hand gestures and asked sexually probing questions. A reasonable juror evaluating this evidence could conclude that this behavior was severe in that it continued after plaintiff asked Dorsey to stop. Furthermore, plaintiff alleges that the terms and conditions of her employment were altered when she spurned Dorsey's sexual advances.[4] Consequently, the court concludes that a genuine issue

---

conduct was unwelcome).

[3]*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

[4]Pl's Dep., 78, 81-82, 144, 151.

of material fact on the fourth prong of the analytical paradigm precludes summary judgment. This case is distinguishable from *Mendoza v. Borden*, 195 F.3d 1238 (11th Cir. 1999) and its progeny, where the Eleventh Circuit held that the plaintiff's allegations were insufficient to trigger the threshold level of substantiality to survive summary judgment.

Lastly, genuine issues of material fact preclude summary judgment on the applicability of the *Faragher* affirmative defense. The threshold issue of whether Dorsey was the plaintiff's supervisor, as that term is defined under this circuit's sexual harassment jurisprudence, is a crucial because it determines the availability of the *Faragher* affirmative defense. *See Johnson v. Booker T. Washington Broad. Serv.*, 234 F. 3d 501, 509-510 (11th Cir. 2000) (indicating that *Faragher* affirmative defense is only available in those situations where supervisor did not take a tangible employment action).

The parties do not dispute that Dorsey, as assistant manager, had the authority to delegate tasks to Murphy; to monitor her performance of those tasks; and to train her regarding her various job requirements. Furthermore, plaintiff's deposition testimony clearly establishes that she perceived Dorsey as possessing supervisory powers, specifically, the power to discipline her and irrevocably terminate her employment.[5] Relying on the definition of supervisor adopted in *Dinkins v. Charoen Pokhand USA, Inc.*, 133 F. Supp. 2d 1254, 1263 (M.D. Ala. 2001), the court concludes that the record contains sufficient evidence that Dorsey had the actual or apparent authority to direct the plaintiff's day-to-day activities in a manner that could have increased the employee's workload. Consequently, the court finds, as a matter of law, that Dorsey was the

---

[5] Pl's Dep., p. 72-73, 145-146.

plaintiff's supervisor for purposes of imputing Title VII liability to Memphis Lamp.[6]

Having determined that Dorsey was the plaintiff's supervisor, the court next turns to Memphis Lamp's contention that it is entitled to summary judgment based upon the application of the *Faragher* affirmative defense. The affirmative defense comprises two necessary elements: (1) that the employer exercised reasonable care to prevent and promptly correct harassing behavior and (2) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer, or to otherwise avoid harm. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998). Both elements must be satisfied for the defendant-employer to avoid liability, and the defendant bears the burden of proof on both elements. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.

Memphis Lamp argues that plaintiff's failure to report her complaints about Dorsey in the manner outlined in its sexual harassment policy entitles it to the protection of the affirmative defense and compels the entry of summary judgment. Murphy did not lodge a sexual harassment complaint against Dorsey in accordance with Memphis Lamp's sexual harassment policy. Plaintiff does not dispute the existence of the policy but alleges that she does not recall receiving the company's sexual harassment policy and that the company's policies about sexual harassment were never explained to her.[7] Murphy also does not recall seeing the posters or notices advising

---

[6]The *Dinkins* court's definition of supervisor is one held by a minority of courts and the EEOC. *See Browne v. Signal Mountain Nursery, L.P.*, No. 1:01-CV-351, 2003 WL 22305164, at *5 (E.D. Tenn. September 29, 2003) (noting the split among the various jurisdictions). However, Memphis Lamp does not address the split of authority or provide the court with any decisional law distinguishing *Dinkins*.

[7]*Id.*, p. 106.

employees to report sexual harassment complaints to a designated company employee at the advertised toll-free number.[8]

Merely having a sexual harassment policy does not automatically satisfy an employer's burden of establishing that it exercised reasonable care to prevent and promptly correct harassing behavior. *See Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1314 (11th Cir. 2001) (indicating that employer has to show that its sexual harassment policy was effectively published and that it contained reasonable complaint procedures). A genuine issue of material fact exists regarding whether the employer exercised proper care in disseminating its sexual harassment policy in a case like this one where the defendant cannot point to any affirmative measures that it took to ensure that employees received a copy of the policy or that the policy was effectively disseminated. *See Faragher,* 524 U.S. at 808 (holding that dissemination of an employer's anti-harassment policy is fundamental to meeting the requirement for exercising reasonable care in preventing sexual harassment). Furthermore, the court finds a genuine issue of fact regarding whether Memphis Lamp's compliant procedure provided the plaintiff with adequate avenues of lodging a compliant to an assessable, designated company representative. *Cf., Madray v. Publix Supermarkets, Inc.,* 208 F.3d 1290, 1298 (11th Cir. 2000) (holding that employer's complaint procedures met the minimum requirements for the *Faragher* affirmative defense because the sexual harassment policy provided the plaintiff with multiple avenues of lodging a complaint to an assessable, designated representative).

The court also concludes that the evidence, when viewed in the light most favorable to

---

[8]Pl's Dep., p. 74, 120-122

the plaintiff, creates a genuine issue of material fact regarding whether Murphy unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer. Although Memphis Lamp's sexual harassment policy directs employees to contact the home office, that fact alone does not entitle the defendant to summary judgment. *See Coates v. Sundor Brands, Inc.,* 164 F.3d 1361, 1365 (11th Cir. 1999) (reasoning that in some cases, the evidence can show that the employee's non-compliance was reasonable under the circumstances). Specifically, a reasonable jury could conclude that plaintiff's reporting of her complaints to Isbell, Dorsey's immediate supervisor, was reasonable given what the plaintiff characterizes as the defendant's failure to properly disseminate its sexual harassment policy. Therefore, summary judgment is due to be denied.

### B. Title VII Pregnancy Discrimination Claim

The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits. *See Armstrong v. Flowers Hosp., Inc.,* 33 F.3d 1308, 1312-13 (11th Cir.1994). To establish a prima facie case of pregnancy discrimination, a plaintiff must demonstrate (1) that she was a member of a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse affect on her employment; and (4) that she suffered from differential application of work or disciplinary rules. *See Armstrong,* 33 F.3d at 1314; *Sermons v. Fleetwood Homes*, 227 F. Supp. 2d 1368, 1375 (S.D. Ga. 2002) (reiterating elements of prima facie pregnancy discrimination case).

Title VII does not require an employer to provide special accommodations to its employees, but only ensures that pregnant employees are given the same opportunities and

benefits as non-pregnant employees who are similarly limited in their ability to work. *See Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1382 (11th Cir. 1994) (holding that an employer violates the rights of a pregnant worker by denying her a benefit generally available to temporarily disabled workers holding similar positions); *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1321 (11th Cir. 2000).

Murphy argues that she has established a prima facie case of pregnancy discrimination because Dorsey changed his standards for lifting when he became aware of Murphy's pregnancy and refused to assist her or to permit co-workers to assist her. According to the plaintiff, prior to Dorsey's learning of her pregnancy, he frequently assisted her in the lifting of heavy boxes. Implicit in this argument is the assumption that actionable discrimination occurred, not because of a differential application of workplace policies between pregnant and non-pregnant employees, but because of Dorsey's refusal to continue to accommodate plaintiff after he learned of her pregnancy.[9]

However, as the above-referenced authorities indicate, an employer's refusal to accommodate the plaintiff's pregnancy is insufficient, as a matter of law, to substantiate a pregnancy discrimination claim. Murphy has not produced any evidence that assistance with the

---

[9]At oral argument, plaintiff's counsel argued that establishing the existence of a similarly-situated non-pregnant compartor is not the only way of establishing a prima facie case of Title VII pregnancy discrimination claim. The court agrees with this general principle but notes that, in the absence of direct evidence of discrimination or circumstantial evidence consisting of something other than the employer's failure to accommodate or provide deferential treatment to a pregnant employee, Murphy has not carried her burden of creating a genuine issue of material fact. *See* 42 U.S.C. § 2000e(k) (indicating that the PDA provides that "women affected by pregnancy, childbirth, or related medical conditions *shall be treated the same for all employment-related purposes* . . . as other persons not so affected but similar in their ability or inability to work.") (emphasis added); *Spivey v. Beverly Enter. Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999) ("The PDA does not require that employers give preferential treatment to pregnant employees.").

10

lifting of heavy boxes was a benefit generally available to temporarily-disabled workers holding similar job positions. Without evidence of a similarly-situated non-pregnant comparator who was provided assistance with the lifting of heavy objects, plaintiff's pregnancy discrimination claim is due to be dismissed as a matter of law.

Based on the foregoing analysis, the court concludes that the defendant's motion for summary judgment (doc. # 52) is due to be GRANTED in part and DENIED in part.

A separate order will be entered.

DONE and ORDERED this 7th day of January, 2004.

KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE